# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

UNITED STATES OF AMERICA        )
                                   )

v.                              )      No. 3:22-CR-00024
                                   )      JUDGE WILLIAM L. CAMPBELL, JR.

MELISSA ANN GOODWIN         )

## PETITION TO ENTER A PLEA OF GUILTY

I, Melissa Ann Goodwin, respectfully represent to the Court as follows:

(1) My true full name is Melissa Ann Goodwin. I was born in Nashville, Tennessee and I am 55 years old and completed 13 years of formal education.

(2) My retained lawyer is Worrick Robinson, IV.

(3) I have received a copy of the Information before being called upon to plead and have read and discussed it with my lawyer, and believe and feel that I understand every accusation made against me in the Information.

(4) I have had sufficient opportunity to discuss with my lawyer the facts and surrounding circumstances concerning the matters mentioned in the Information. My lawyer has counseled and advised me as to the nature and cause of every accusation against me. We have thoroughly discussed the government's case against me and my potential defenses to the government's case. My lawyer has explained each element of the crime charged to me and what the government would offer to prove these elements beyond a reasonable doubt.

(5) I understand that the statutory penalty for each of the offenses with which I am charged is Count 1 (Wire Fraud)- not more than 20 years imprisonment, a fine of up to $250,000, a mandatory $100 special assessment, and a term of supervised release of not more than 3 years in addition to such term of imprisonment.

(6) I have been advised that I will be sentenced to a sentence sufficient but not greater than necessary to satisfy the goals of sentencing specified in 18 U.S.C. § 3553(a). One consideration will be Guidelines established by the United States Sentencing Commission. I understand that these Guidelines are advisory, but that the Court must take account of the Guidelines together with other sentencing goals. My lawyer and I have discussed the calculation

of the Guidelines in my case. My lawyer has given me an estimate of the Guidelines range that may apply in my case. I realize that this is simply my lawyer's estimate. I understand that my advisory Guideline range will be calculated by the United States Probation Officer who prepares the presentence report in my case. This estimation is subject to challenge by either me or the government, unless prohibited by a plea agreement. The final Guideline calculation will be made by the Court. I further understand that I may be sentenced to a fine to be calculated through the Guidelines. No fine will be imposed if the Judge finds me unable to pay any fine. Considered in this fine may be the amount of financial loss to the victim or gain to me as well as the costs of any confinement or probation supervision. The Court may also order that restitution be made to any victim of the offense. [If I am convicted of any offense specified in 18 U.S.C. § 3663A(c), or as otherwise required by law, restitution is mandatory.] I have a right to a review of my sentence by the United States Court of Appeals for the Sixth Circuit unless waived in the plea agreement.

(7) I understand that, under 18 U.S.C. § 3561(a), I am not eligible for a sentence of probation if I receive any sentence of imprisonment at the same time on this offense or any other offense, or am convicted of a Class A or Class B felony, or the offense is one for which probation is expressly prohibited. I have been informed that under the present federal sentencing system there is no parole. I will receive only 54 days good time credit per year and it will not vest until the end of each year. I also understand that if I am sentenced to a period of supervised release and I violate the terms of that supervised release, upon revocation, I could be imprisoned again.

(8) I understand that should this plea of guilty be accepted, I will be a convicted felon in the eyes of the law for the rest of my life. This means, under present law that (a) I cannot vote in Tennessee, unless my right to vote is lawfully restored, and may not be eligible to vote in other states; (b) I cannot possess a firearm anywhere; (c) If I am presently on probation, parole, or supervised release whether state or federal, the fact that I have been convicted may be used to revoke my probation, parole or supervised release regardless of what sentence I receive on this case; (d) If I am convicted of any crime in the future, whether state or federal, this conviction may be used to increase that sentence; (e) I may have to disclose the fact that I am a convicted felon when applying for employment and such disclosure may result in my not getting some jobs and having difficulty in getting others. [If I have been convicted of certain drug offenses, my conviction may result in my losing entitlement to certain federal benefits pursuant to the AntiDrug Abuse Act of 1988.] I understand that this list may not include all of the adverse consequences of my conviction in this case.

(9) I understand that I can plead "NOT GUILTY" to any or all offenses charged against me, and continue to plead "NOT GUILTY", and that if I choose to plead not guilty, the Constitution guarantees me (a) the right to a speedy and public trial by jury; (b) the right not to testify and no implication of guilt would arise by my failure to do so; (c) the right to be presumed

innocent until such time, if ever, that the government proves my guilt beyond a reasonable doubt to the satisfaction of a court and jury; (d) the right to see and hear all the witnesses and to cross-examine any witness who may testify against me; (e) the right to use the power and process of the court to compel the production of any evidence, including the attendance of any witnesses, in my favor; and to testify in my own behalf if I choose to do so; (f) the right to have the assistance of counsel in my defense at all stages of the proceedings; (g) if I am convicted at such trial I have the right to appeal with a lawyer to assist me and the appeal will not cost me any money if I am indigent. I understand that if the Court accepts my plea that there will be no jury trial and that I will be convicted of the count(s) to which I plead just as if a jury found me guilty of the charge(s) following a trial. The Court may then impose sentence upon me within the limits set forth in any plea agreement stated in paragraph (13), subject to the maximum punishments set forth in paragraph (5).

(10) No officer or agent of any branch of government (federal, state or local), nor any other person, has guaranteed me what sentence I will receive. If there are any agreements between myself and my lawyer and the prosecution concerning my plea they are fully set forth in paragraph (13) below. I understand that even with a plea agreement no person can bind the Judge to give any particular sentence in my case. If the Judge rejects a recommendation made pursuant to Rule 11(c)(1)(B) I have no right to withdraw my plea. I understand that if the Judge decides to make a recommendation about where I should serve any incarceration that the recommendation is not a promise or a guarantee, but only a recommendation and is not binding on the Bureau of Prisons which will make the final decision (after I am sentenced) about where I will be incarcerated.

(11) My lawyer has done all the investigation and research in this case that I have asked him to do, and has reviewed with me the discovery material provided by the Government. I am satisfied with his representation at this point.

(12) Fully understanding my rights to plead "NOT GUILTY" and fully understanding the consequence of my plea of guilty, I wish to plead "GUILTY" and respectfully request the Court to accept my plea as follows: As charged in the Information. MA WGR4

(13) This plea is a result of a plea agreement between my lawyer and the prosecution under the provisions of Rule 11 of the Federal Rules of Criminal Procedure. The plea agreement is as follows:

The particularized terms and conditions of the plea agreement are contained in the attached "Plea Agreement" prepared by Assistant United States Attorney Kathryn Booth.

(14) I offer my plea of "GUILTY" freely and voluntarily and of my own accord; also my lawyer has explained to me, and I feel and believe I understand this petition.

(15) I am not under the influence of either drugs or alcohol.

(16) I request the Court to enter now my plea of "GUILTY" as set forth in paragraph (12) of this petition, in reliance upon my statements made in this petition.

(17) Recognizing that the Court may reserve acceptance of this plea pending the receipt of the pre-sentence report, I agree that the pre-sentence report may be disclosed to the United States Attorney, my counsel and myself, prior to the sentencing hearing. Signed by me in open court under the penalties of perjury in the presence of my lawyer, this the ___ day of _____, 20__.

_Melissa Ann Goodwin_
Melissa Ann Goodwin
Defendant

## ACKNOWLEDGMENT OF GOVERNMENT ATTORNEY

The maximum punishment, plea and plea agreement are accurately stated above.

_Katy Booth_
Kathryn Booth
Lawyer for Government

## CERTIFICATE OF COUNSEL

The undersigned, as lawyer and counselor for Melissa Ann Goodwin, hereby certifies as follows:

(1) I have read and fully explained to Melissa Ann Goodwin all the accusations against her in this case;

(2) To the best of my knowledge and belief each statement set forth in the foregoing petition is accurate and true;

(3) In my opinion the plea of "GUILTY" is voluntarily and understandingly made; and I recommend to the Court that the plea of "GUILTY" be accepted and entered as requested in paragraph (12) of the foregoing petition.

Signed by me in open court in the presence of ___ this _____ 8th _____ day of __ February , 20 22

_____
Worrick Robinson, IV
Lawyer for the Defendant

## O R D E R

Good cause appearing therefore from the foregoing petition of the foregoing named defendant and the certificate of her counsel and for all proceedings heretofore had in this case, it is ORDERED that the petition be granted and the defendant's plea of "GUILTY" be accepted and entered as prayed in the petition and as recommended in the certificate of counsel. Done in open court this 8th day of February , 2022

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 3:22-CR-00024 |
| v. | ) | |
| | ) | Judge Campbell |
| MELISSA ANN GOODWIN | ) | |

## PLEA AGREEMENT

The United States of America, through Mark H. Wildasin, United States Attorney for the Middle District of Tennessee, and Assistant United States Attorney Kathryn W. Booth, and defendant, Melissa Ann Goodwin, through defendant's counsel, Worrick G. Robinson IV and Lynne T. Ingram, pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, have entered into an agreement, the terms and conditions of which are as follows:

### Charges in This Case

1.      Defendant acknowledges that she has been charged in the information in this case with wire fraud in violation of Title 18, United States Code Section 1343 and forfeiture as described herein.

2.      Defendant has read the charge against her contained in the information. That charge has been fully explained to her by her attorney. Defendant fully understands the nature and elements of the crime with which she has been charged.

### Charge to Which Defendant is Pleading Guilty

3.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One the information, charging wire fraud.  In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

4.     The parties understand and agree that the offense to which defendant will enter a plea of guilty carries the following maximum penalties: 20 years' imprisonment, a fine of up to $250,000, three years' supervised release, and a $100 special assessment. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court. Defendant also understands that as a result of her offense[s], she is subject to forfeiture of property as alleged in the information.

<u>Acknowledgements and Waivers Regarding Plea of Guilty</u>
<u>Nature of Plea Agreement</u>

5.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 3:22-CR-00024.

6.     Defendant understands that by pleading guilty she surrenders certain trial rights, including the following:

a.     If defendant persisted in a plea of not guilty to the charge against her, she would have the right to a public and speedy trial. Defendant has a right to a jury trial, and the trial would be by a judge rather than a jury only if defendant, the government, and the Court all agreed to have no jury.

b.     If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent; that the government bears the burden of proving defendant guilty of the charges beyond a

2

reasonable doubt; and that it must consider each count of the information against defendant separately.

        c.      If the trial were held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

        d.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence on her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court.

        e.      At a trial, defendant would have a privilege against self-incrimination so that she could testify or decline to testify, and no inference of guilt could be drawn from her refusal to testify.

        7.      Defendant understands that by pleading guilty she is waiving all of the trial rights set forth in the prior paragraph. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

Factual Basis

        8.      Defendant will plead guilty because she is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt:

        The T.J. Martell Foundation for Cancer Research ("the Foundation") was the music industry's leading foundation that funds innovative medical research focused on finding treatments

3

and cures for cancer. The Foundation raises money for cancer research by soliciting in-kind donations from celebrities and then auctioning off those donations for a profit.

The Defendant was an employee of the Foundation from 2005 until July 2020. The Defendant was employed in various capacities. Beginning in approximately June 2011, the Defendant managed and oversaw the financial operations of the entire Foundation and reported directly to the CEO. From 2018 until July 2020, she was the Executive Vice President and General Manager. The Defendant's duties included: working with staff to organize and execute Foundation events; maintaining the Foundation's national budget; procuring various insurance policies for the Foundation; being the point-person with the Foundation's accounting firm; handling payroll; and establishing and procuring contracts for the Foundation.

In its fundraising efforts, the Foundation primarily relied on donated items, but occasionally auctioned items on a consignment basis. When the Foundation auctioned items on consignment, the Foundation borrowed the consignment items from a consignment vendor and put those items up at auction. Once the Foundation received an invoice, it paid the vendor the consignment price for any items that were sold at auction.

Individual One, an individual known to the Acting United States Attorney, was the founder and owner of a charity auction business based in New York City ("Business A"). Business A, a business known to the Acting United States Attorney, conducted auctions for clients and offered consignment items, such as event tickets or sports memorabilia, to clients for use in their auctions. On occasion, the Foundation used the services of Business A to provide consignment items at auction.

The Foundation hired Accounting Firm One, an accounting firm known to the Acting United States Attorney, to issue checks for the Foundation, to record Foundation credit card

4

expenses in QuickBooks (an accounting software program), and to create periodic financial reports for the Foundation. The Defendant was the primary point of contact between Accounting Firm One and the Foundation, and it was her job to provide Accounting Firm One with the Foundation's credit card statements and expense reports so that Accounting Firm One could prepare the financial reports. Further, it was the Defendant's responsibility to provide the financial reports prepared by Accounting Firm One to the Foundation's CEO.

Beginning in or about July 2018, and continuing until in or about June 2020, in the Middle District of Tennessee and elsewhere, the Defendant devised and intended to devise a scheme and artifice to defraud the T.J. Martell Foundation, and others, and to obtain money and property by means of materially false pretenses, representations, and promises, and by acts of concealment of the scheme, and in furtherance thereof, used interstate wires, which scheme is further described in the following paragraphs.

While the Defendant was employed at the Foundation, it had an active JPMorgan Chase corporate credit card account ending in account number x0241. Sometime before July 2018, the Defendant obtained a Foundation credit card in her own name, credit card account ending in x1527, which was a sub-account of the Foundation credit card account ending in x0241.

Beginning in at least approximately July 2018, the Defendant began using the Foundation credit card ending x1527 to make large ticket purchases through online ticket and event vendors such as Ticketmaster, Stubhub, Primesport, and On-Location. Some of the tickets the Defendant purchased were for musical concerts, such as Lady Gaga and Celine Dion, and some were to sporting events, such as the Super Bowl LIV, which was a major sporting event that was scheduled to take place in Miami, Florida, on February 2, 2020. The tickets that the Defendant purchased were not for a legitimate Foundation purpose.

5

The Defendant also used the Foundation's credit card to purchase other items that were not for legitimate Foundation purposes, such as expensive and rare alcohols, plane tickets, and hotel stays.

After the Defendant purchased the tickets at market resale value through online ticket and event vendors such as Ticketmaster, Stubhub, Primesport, and On-Location, she provided those tickets and some of the other items purchased with the Foundation's credit card to Individual One. It was part of the scheme that the Defendant led Individual One to believe she had acquired those tickets for free or at a discounted rate.

Between July 2018 and April 2020, the Defendant purchased approximately $3.96 million in tickets from Ticketmaster, Stubhub, Primesport, and On-Location using the Foundation's credit card. Goodwin then used the Foundation bank accounts to make payments on the credit card.

In order to conceal the purchases and checks she wrote, the Defendant provided falsified credit card statements and false expense reports to Accounting Firm One. Before providing them to Accounting Firm One, the Defendant altered the credit card statements to conceal purchases she made from Ticketmaster, Stubhub, Primesport, and On-Location, as well as other expenses. She often replaced those expenses with other vendors so that the charges appeared to be legitimate Foundation expenses. In total, the Defendant concealed over $3 million in fraudulent credit card expenses.

Accounting Firm One prepared the Foundation's periodic financial statements based on these falsified credit card statements and expense reports. Accounting Firm One then emailed those financial statements to the Defendant, whose job it was to provide them to the Foundation's CEO. After receiving the financial statements from Accounting Firm One, the Defendant falsified those financial statements before providing them to the Foundation's CEO. The Defendant

6

falsified the financial statements by inflating the Foundation's assets and lowering its liabilities to make the Foundation appear to be more liquid than it actually was at the time. For example, on the August 31, 2019, periodic financial statement, the Defendant inflated the cash balance by $500,000, and on the 2019 Year-End Financials, the Defendant inflated the cash balance by $1,020,000. These falsifications prevented the Foundation from detecting the Defendant's fraudulent transactions.

The Defendant caused payments to be made to the Foundation's credit card from Business A's bank account related to the tickets she purchased as part of the scheme.

Further, the Defendant forged the signature of the Foundation's CEO on various Foundation checks. The Defendant did not have authority to sign Foundation checks. The Foundation had a policy that any check over $5,000 must be signed by at least two signatories— the Foundation's CEO and the Foundation's in-house counsel. Despite this, the Defendant signed the CEO's name on several checks that were not approved by the Foundation. The Defendant forged the CEO's name on the following checks without authorization or approval:

| Check Date | Payable to | Check Amount |
|---|---|---|
| 05/23/2019 | Business A | $12,500.00 |
| 02/06/2020 | Business A | $122,211.00 |
| 02/13/2020 | Business A | $600,950.00 |
| 02/21/2020 | Business A | $34,530.00 |
| 03/11/2020 | Business A | $119,652.28 |
| 03/23/2020 | Business A | $76,432.50 |

On or about the April 11, 2020, in the Middle District of Tennessee and elsewhere, the Defendant, for the purpose of executing and attempting to execute the scheme to defraud, caused to be transmitted by means of wire communications in interstate commerce an email dated April 11, 2020, to S.S., an employee at Accounting Firm One, which contained falsified credit card statements that omitted payments to the credit card from Business A's bank account and falsified

7

and concealed other fraudulent expenses the Defendant had incurred on the Foundation's credit card, in violation of Title 18, United States Code, Section 1343.

This statement of facts is provided to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and criminal forfeiture. The statement of facts does not contain each and every fact known to defendant and to the United States concerning defendant's and/or others' involvement in the offense conduct and other matters.

<u>Sentencing Guidelines Calculations</u>

9.      The parties understand that the Court will take account of the United States Sentencing Guidelines (hereinafter "U.S.S.G."), together with the other sentencing factors set forth at 18 U.S.C. § 3553(a), and will consider the U.S.S.G. advisory sentencing range in imposing defendant's sentence. The parties agree that the U.S.S.G. to be considered in this case are those effective November 1, 2018.

10.     For purposes of determining the U.S.S.G. advisory sentencing range, the United States and defendant to recommend to the Court, pursuant to Rule 11(c)(1)(B), the following:

      a.      Offense Level Calculations.

           i.      The base offense level for the counts of conviction and relevant conduct is seven (7), pursuant to U.S.S.G. § 2B1.1(a)(1).

           ii.     The base offense level should be increased by eighteen (18) levels pursuant to U.S.S.G. § 2B1.1(b)(1)(J) because the loss is greater than $3.5 million but less than $9.5 million.

           iii.    The base offense level should be increased by two (2) levels pursuant to U.S.S.G. § 2B1.1(b)(2)(A) because the offense resulted in substantial financial hardship to one or more victims.

8

iv.     The parties agree to disagree about whether the base offense level should be increased by two (2) levels pursuant to U.S.S.G. § 2B1.1(b)(10)(C) because the offense involved sophisticated means. The Government contends this enhancement applies; the defendant contends it should not.

v.     The base offense level should be increased by two (2) levels pursuant to U.S.S.G. § 3B1.3 because the offense involved an abuse of trust.

vi.     Assuming defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the government, through her allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming defendant accepts responsibility as described in the previous sentence, the United States will move for an additional one-level reduction pursuant to U.S.S.G § 3E1.1(b), because defendant will have given timely notice of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.

b.     **Criminal History Category.** The parties do not have any agreement about the defendant's relevant criminal history, but anticipate that the defendant will be in Criminal History Category I.

c.     **Recommended Offense Level**. Therefore, the parties agree to recommend to the Court a final offense level of **28** (if the offense involves Sophisticated Means) or **26** (if it does not) (the "Recommended Offense Level"). Defendant understands that the offense level as ultimately determined by the Court (the "court-determined offense level") may be different from the Recommended Offense Level. Defendant likewise understands

9

that the guidelines range as ultimately determined by the Court (the "court-determined guidelines range") may be based on an offense level different from the Recommended Offense Level.

d. Defendant is aware that the Recommended Offense Level is a prediction, not a promise, and is not binding on the Probation Office or the Court. Defendant understands that the Probation Office will conduct its own investigation and make its own recommendations, that the Court ultimately determines the facts and law relevant to sentencing, that the Court's determinations govern the final guidelines calculations, and that the Court determines both the final offense level and the final guidelines range. Accordingly, the validity of this agreement is not contingent upon the Probation Officer's or the Court's concurrence with the above calculations. In the event that the Probation Office or the Court contemplates any U.S.S.G. adjustments, departures, or calculations different from those recommended above, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same. Defendant further acknowledges that if the Court does not accept the U.S.S.G. recommendations of the parties, defendant will have no right to withdraw his guilty plea.

<u>Agreements Relating to Sentencing</u>

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the Court is neither a party to nor bound by this Plea Agreement and, after consideration of the U.S.S.G., may impose the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea. Similarly,

10

defendant understands that any recommendation by the Court related to location of imprisonment is not binding on the Bureau of Prisons.

13.     Regarding restitution, the parties acknowledge that the amount of restitution owed to victim is $3,765,606.77, and that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make restitution in this amount, minus any credit for funds repaid prior to sentencing. Unless the Court orders otherwise, restitution shall be due immediately.

14.     Defendant agrees to pay the special assessment of $100 at the time of sentencing to the Clerk of the U.S. District Court.

<u>Forfeiture in the Form of a $3,765,606.77 Money Judgment</u>

15.     The Information charges that Defendant is liable to the United States in the amount of $3,765,606.77, as said amount represent the proceeds of the scheme and artifice to defraud as charged in the Information.   Said $3,765,606.77 is subject to forfeiture because these funds constitute or are derived from proceeds traceable to a violation of Title 18, United States Code, Section 1343 as charged in the Information. By entry of a guilty plea to the Information, Defendant acknowledges that the property identified above is subject to forfeiture.

16.     The Defendant agrees that the amount of proceeds of the offense of conviction as alleged in the Information is $3,765,606.77. The Defendant has admitted that between July 2018, and June 2020, she engaged in a wire fraud scheme to defraud TJ Martel, Individual One, Accounting Firm One, and others, by making materially false statements in order to obtain money or property. Defendant made fraudulent and unauthorized purchases on the Foundation credit card in the amount of approximately $3.9 million, e-mailed falsified credit card statements to Accounting Firm One, and e-mailed falsified periodic financial statements to the Foundation's CEO. In addition, the defendant forged the CEO's signature on several checks. The defendant

caused a total loss in the amount of approximately $3,765,606.77.

17.    The Defendant agrees to the entry of an Order of Forfeiture consisting of a Money Judgment in the amount of $3,765,606.77 United States currency as to Count One in that this property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 as monies which constitute or are derived from proceeds traceable to a violation of 18 U.S.C. § 1343.

18.    The Defendant and the United States agree that every effort will be made to credit any payment toward forfeiture against both the Order of Forfeiture and any restitution order via the remission and restoration process. However, the parties acknowledge that the ultimate discretion lies with the Money Laundering and Asset Recovery Section of the U.S. Department of Justice regarding whether to grant or deny any request related to the remission or restoration process.

19.    The Defendant will cooperate and assist the United States in its efforts to recover the proceeds of the crime.

20.    The Defendant understands that, with the exception of restitution as set forth previously, forfeiture of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon the Defendant in addition to the Order of Forfeiture.

21.    The Defendant acknowledges that, with the exception of the Subject Property previously referenced in this Plea Agreement for forfeiture, as a result of her acts or omissions, the proceeds of her crime of conviction which are subject to forfeiture:

        a.    cannot be located upon exercise of due diligence;

        b.    has been transferred or sold to, or deposited with, a third party;

        c.    has been placed beyond the jurisdiction of the Court

        d.    has been substantially diminished in value; or

e.      has been commingled with other property, which cannot be divided without difficulty

and as a result, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeiture of substitute property up to the value of up to $3,765,606.77 United States currency as to Count One.

22.     The Defendant further agrees to the forfeiture of substitute assets and entry of an order allowing the United States to conduct any discovery proper in identifying, locating or disposing of the property subject to forfeiture, including depositions, interrogatories, requests for production of documents and the issuance of subpoenas, without further application to the Court and to facilitate the identification and location of property declared forfeited, substitute assets, and to facilitate the disposition of any petitions for remission, mitigation or restoration. The substitute property recovered shall not exceed in total $3,765,606.77 United States currency as to Count One.

23.     The Defendant further agrees to cooperate fully and to execute any supplementary documents, including authorizing the United States to obtain Defendant's credit report, and to take any additional actions that may be necessary or appropriate to effect this agreement as to forfeiture, restitution, and substitute assets.

24.     The Defendant further authorizes the United States Probation and Pretrial Services Office (U.S.P.O.) to release the Presentence Investigative Report and all financial documents pertaining to Defendant to the Asset Forfeiture Unit of the United States Attorney's Office ("AF Unit") for the Middle District of Tennessee.

25.     The Defendant further authorizes the Internal Revenue Service to Release Defendant's tax returns for the years beginning 2018 through the pendency of the payment of the full amount of the Order of Forfeiture.

13

26.     The Defendant agrees to waive all appellate rights concerning the entry of an Order of Forfeiture consisting of a Money Judgment, the Preliminary Order of Forfeiture as to the Subject Property, and all matters related thereto.

### Presentence Investigation Report/Post-Sentence Supervision

27.     Defendant understands that the United States Attorney's Office, in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing, shall fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against her, as well as any related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

28.     Defendant agrees to execute truthfully and completely a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the Probation Officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of her sentence for obstruction of justice under U.S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

29.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Plea

14

Agreement are limited to the United States Attorney's Office for the Middle District of Tennessee and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Plea Agreement.

30. 23. Defendant understands that nothing in this Plea Agreement shall limit the Internal Revenue Service (IRS) in its collection of any taxes, interest, or penalties from defendant.

### Entry of Guilty Plea

31. 24. The parties jointly request that the Court accept the defendant's plea of guilty as set forth in this agreement and enter an order reflecting the acceptance of the plea while reserving acceptance of this plea agreement until receipt of the pre-sentence report and sentencing.

### Waiver of Appellate Rights

32. 25. Regarding the issue of guilt, defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether she is guilty of the crime(s) to which she is agreeing to plead guilty; and (ii) trial rights that might have been available if she exercised her right to go to trial. Regarding sentencing, Defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal any sentence within or below the guideline range associated with the Recommended Offense Level when combined with defendant's criminal history category as determined by the Court. Defendant further waives all appellate rights and all collateral attacks concerning forfeiture and all matters related thereto. Defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18 U.S.C. § 3582(c)(2) and in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241. However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness,

15

prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the government waives the right to appeal any sentence: (i) within or above the guideline range associated with the Recommended Offense Level when combined with defendant's criminal history category.

<u>Other Terms</u>

26. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office. Defendant further agrees that any monetary penalties imposed by the Court will be subject to immediate enforcement as provided for in 18 U.S.C. § 3613, and submitted to the Treasury Offset Programs so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts but will not affect the periodic payment schedule.

27. Defendant agrees to cooperate with the IRS in any tax examination or audit of defendant that directly or indirectly relates to or arises out of the course of conduct defendant has acknowledged in this Plea Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request. Nothing in this paragraph precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

28. Defendant understands that pursuant to Title 12, United States Code, Section 1829, her conviction in this case will prohibit her from directly or indirectly participating in the affairs of any financial institution insured by the Federal Deposit Insurance Corporation (FDIC) except with the prior written consent of the FDIC and, during the ten years following her conviction, the additional approval of this Court. Defendant further understands that if she violates this

16

prohibition, she may be punished by imprisonment for up to five years and a fine of up to $1,000,000.

29. Should defendant engage in additional criminal activity after she has pled guilty but prior to sentencing, defendant shall be considered to have breached this Plea Agreement, and the government at its option may void this Plea Agreement.

<u>Conclusion</u>

30. Defendant understands that the information and this Plea Agreement have been or will be filed with the Court, will become matters of public record, and may be disclosed to any person.

31. Defendant understands that her compliance with each part of this Plea Agreement extends until such time as she is sentenced, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. Defendant further understands that in the event she violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Plea Agreement, or may require defendant's specific performance of this Plea Agreement.

32. Defendant and her attorney acknowledge that no threats have been made to cause defendant to plead guilty.

33. No promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and none will be entered into unless memorialized in writing and signed by all of the parties listed below.

17

**Defendant's Signature:** I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending information. Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and I voluntarily agree to it.

Date: 2/8/2022

Melissa Ann Goodwin
Defendant

35. <u>Defense Counsel Signature:</u> I am counsel for defendant in this case. I have fully explained to defendant her rights with respect to the pending information. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to defendant the provisions of those guidelines that may apply in this case. I have reviewed carefully every part of this Plea Agreement with defendant. To my knowledge, defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

Date: 2/8/2022

Worrick G. Robinson, IV
Lynne T. Ingram
Attorneys for Defendant

Respectfully submitted,

MARK H. WILDASIN
United States Attorney

By:

Kathryn W. Booth
Assistant U.S. Attorney

Stephanie N. Toussaint
Deputy Criminal Chief

19